# JOSEPH & KIRSCHENBAUM LLP
## ATTORNEYS AT LAW

June 30, 2025

**Via ECF**

Hon. Hector Gonzalez
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Schwalb v. CUNY Queens College* **- Joint Letter**

Dear Judge Gonzalez,

We represent the Plaintiff in the above captioned case. I write jointly with Defendant pursuant to the Court's May 27, 2025 Scheduling Order ("Scheduling Order") directing the parties to file a joint letter describing the case along with the proposed Case Management Plan.

## **Plaintiff's Position**

### *Background*

Plaintiff worked for CUNY Queens College ("CUNY") as a part-time adjunct accounting professor ("Adjunct") from 2012 until her termination in May 2023. Plaintiff is an observant Jewish woman. For 12 years, Plaintiff taught two to three classes per semester during the academic years, as well as two classes each summer. Throughout her tenure, Plaintiff received excellent reviews from her students, and her classes were fully enrolled. In 2023, CUNY informed Plaintiff that she would not be reappointed to her position for the upcoming school year. At the same time, CUNY also terminated five other Jewish Adjuncts. CUNY retained its numerous non-Jewish Adjuncts, many of whom had fewer years of seniority and lower performance ratings from students. Plaintiff's employment, and that of the five other terminated Jewish Adjuncts, is governed by a collective bargaining agreement ("CBA") which outlines the procedures CUNY must follow when terminating an Adjunct.  Notably, CUNY did not follow the procedures for termination required by the CBA. Further, CUNY asserts that it terminated Plaintiff, and its five other Jewish Adjuncts, because of a shortage of student enrollment and based on budgetary needs. This assertion is belied by the fact that Plaintiff's classes were fully enrolled at the time CUNY informed Plaintiff of its decision to terminate her. In addition, none of Plaintiff's classes were cancelled; rather, they were assigned to CUNY's non-Jewish Adjuncts.

### *Legal Basis of Plaintiff's Claims*

Plaintiff alleges that CUNY violated Title VII when it decided to rid its Accounting department of all its non-tenured Jewish Adjuncts in 2023. In order to make a *prima facie* claim for religious discrimination under Title VII, a plaintiff must show that she is a member of a protected class, she is qualified for the position she had, she endured an adverse employment action, and the circumstances give rise to an inference of discrimination based on the employee's

JOSEPH & KIRSCHENBAUM LLP
ATTORNEYS AT LAW

protected status. *See Muhammad v. NY City Tr. Auth.*, 52 F Supp 3d 468, 484 (E.D.N.Y. 2014), *citing Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004). Here, Plaintiff clearly satisfies all elements of a *prima facie* case of religious discrimination. Plaintiff is a Jewish woman who was satisfactorily performing the duties required by her position, as documented by her many reviews and assessments from students and supervisors. Plaintiff's employment was terminated, and her work was immediately distributed to several non-Jewish Adjuncts who remained employed by the university. A jury could infer discriminatory animus from the fact that Plaintiff was otherwise qualified for and excelled in her role as an Adjunct, that five of the six terminated Adjuncts were Jewish, that CUNY did not follow the protocol required in the CBA for terminating Adjuncts when it fired Plaintiff and five other Jewish Adjuncts, and that Plaintiff was replaced by someone outside of her protected class. *See Kallinikos v. NY State Dept. of Corr. & Community Supervision*, 2019 US Dist LEXIS 119064, at *18-19 (E.D.N.Y. 2019) (showing plaintiff was replaced by someone outside the protected class suffices to establish required inference of discrimination); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) (plaintiff may support inference of discrimination by showing similarly situated employees outside protected class were treated more favorably).

  Assuming a plaintiff demonstrates a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, clear, specific and non-discriminatory reason for discharging the employee. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant satisfies this burden of production, the plaintiff has the ultimate burden to prove that the employer's reason was merely a pretext for discrimination. *Id. at 804*. To establish that Defendant's proffered reason for discharging Plaintiff was pretextual, Plaintiff must demonstrate through "direct, circumstantial, or statistical evidence" that Defendants' reason(s) for discharging her were false, and that it was more likely that Defendant discharged her because of her membership in a protected class, namely her religious identity. *See Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F. Supp. 667, 676 (S.D.N.Y. 1995). Here, Plaintiff will establish that Defendant's proffered legitimate business reasons for her termination are pretextual using circumstantial evidence.

  When firing Plaintiff, CUNY told Plaintiff that her termination was not the result of her performance. Rather, CUNY claimed that it terminated her and its five other Jewish Adjuncts in response to enrollment and budgetary needs. Upon information and belief, CUNY terminated six Adjuncts in 2023. Of those terminated Adjuncts, five were Jewish. While Jewish Adjuncts made up a minority of the total Adjunct staff; Jewish Adjuncts made up over 80 percent of the Adjunct terminations in 2023. It is unlikely that the only way CUNY could meet its alleged enrollment and budgetary needs was to fire all its Jewish Adjuncts and just one non-Jewish Adjunct.

  Further, CUNY cited diminished budget and enrollment as the reason for terminating its Jewish Adjuncts in 2023. However, Plaintiff's courses were not only fully enrolled when she was terminated, they were also reassigned to a non-Jewish instructor. The non-Jewish instructor was given the opportunity to become a full-time instructor and take on Plaintiff's courses, while Plaintiff – and the other Jewish Adjuncts – were not provided that option. Where a defendant's proposed legitimate business reasons for its actions are internally contradictory, or contradict documentary evidence, courts have deemed these inconsistencies to be evidence of pretext. *Legg v. Ulster County*, 820 F3d 67, 75 (2d Cir. 2016) (plaintiff could establish pretext and intentional

32 Broadway • Suite 601 • New York, New York 10004
Phone 212-688-5640 • Fax: 212-688-2548

# JOSEPH & KIRSCHENBAUM LLP
## ATTORNEYS AT LAW

discrimination by pointing out significant inconsistencies in employer's justification); *see, e.g., Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013); *Graciani v Patients Med., P.C.*, 2015 US Dist LEXIS 117155, at *34-35 (E.D.N.Y. 2015).

Finally, A jury could find that Defendant's stated rationale that it fired Plaintiff for budgetary and enrollment reasons was pretextual because Defendant violated its own obligations under the CBA when executing the terminations of Plaintiff and five other Jewish Adjuncts. *See Gallo v. Prudential Residential Servs., Ltd P'ship*, 22 F.3d 1219, 1226-27 (2d Cir. 1994) (employer's violation of its own policy showed discriminatory intent); *Corona v. Clarins U.S.A., Inc.*, No. 17 CV 4438, 2019 U.S. Dist. LEXIS 155862, at *8 (S.D.N.Y. Sept. 12, 2019) ("That a company ignores its own policies or procedures when it takes action against an employee can cast doubt on the good faith of the process." (citing *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 313 (2d Cir. 1997)). CUNY did not conduct a "comprehensive review of the [Plaintiff's] performance" and by "insufficiently demonstrat[ing] … fiscal and programmatic needs within a 'feasible and rational academic personnel policy'" and thus did not provide the justification for her termination required by the CBA.

### Defendant CUNY's Position

Defendant City University of New York ("CUNY" or "Defendant")[1] denies Plaintiff's claim of discrimination. Plaintiff was not reappointed to her position based on legitimate business reasons.

In January 2012, Queens College ("QC") hired Plaintiff as an Adjunct Lecturer in the Accounting and Information Systems Department ("AIS" or the "Department"). Plaintiff was given a series of reappointments, including two consecutive three-year appointments for the academic years spanning 2017 through 2023. In the Spring of 2023, the Department's enrollment was significantly lower than it had been in 2015, thus decreasing its need for faculty. The Department conducted an analysis looking at, *inter alia*, the subject-matter of courses taught by each adjunct under consideration for successive reappointments and the teaching specializations of full-time faculty. At that time, QC also anticipated a budget cut. As a result, the Department decided not to reappoint Plaintiff and other adjuncts who taught certain types of courses (namely, Financial Accounting courses). In sum, the decision not to reappoint Plaintiff was based on the Department's financial and programmatic constraints. Plaintiff's contention that she was non-reappointed for discriminatory reasons is unfounded.[2]

After her non-reappointment, Plaintiff availed herself of her rights under the applicable collective bargaining agreement and filed a grievance; her grievance was denied and she did not appeal the decision. Instead, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). On February 10, 2025, the EEOC issued a Notice of Right to Sue. On May 9, 2025, Plaintiff commenced this action by filing a complaint. ECF No. 1. In her initial

---

[1] Queens College is a senior college in the CUNY system and is not a "legally cognizable entity apart from CUNY." *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 81 n.2 (2d Cir. 2004) (per curiam), cert. denied, 543 U.S. 987 (2004).
[2] CUNY does not track the religious affiliation of its employees and the only way CUNY would be aware of an employee's religious is if the employee chooses to self-identify.

# Joseph & Kirschenbaum LLP
## Attorneys At Law

complaint, she asserted claims of race and religious discrimination under two statutes: 42 U.S.C. § 1981 and the New York State Human Rights Law. She did not assert a Title VII claim.

On June 9, 2025, Defendant filed a pre-motion letter demonstrating that both of the claims Plaintiff asserted in her original Complaint failed as a matter of law and were subject to dismissal. *See* ECF No. 9. On June 12, 2025, Plaintiff filed the Amended Complaint, abandoning both of these claims and asserting, for the first time, a single claim under Title VII. *See* FAC.[3] Defendant's answer or pre-motion letter in response to the Amended Complaint is due on July 18, 2025. *See* June 20, 2025 Order.

The parties do not unanimously agree to a referral for a settlement conference with the Magistrate Judge or to the Eastern District of New York's Court-Annexed Mediation program at this time.

We thank you for your careful consideration of this matter.

Respectfully Submitted,

/s/D. Maimon Kirschenbaum
D. Maimon Kirschenbaum
Leah Seliger

JOSEPH & KIRSCHENBAUM, LLP
32 Broadway, Suite 601
New York, NY 10004
*Attorney for Plaintiff*


LETITIA JAMES
Attorney General
State of New York
*Counsel for Defendant CUNY*

/s/ Elyce Matthews
Elyce Matthews
Assistant Attorney General
28 Liberty Street
New York, NY  10005

---

[3] Plaintiff did not assert her Title VII claim within 90 days of receiving her Notice of Right to Sue from the EEOC.