JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law
Charles Joseph
D. Maimon Kirschenbaum
Denise Schulman
Josef Nussbaum
Lucas C. Buzzard
Mike DiGiulio
Leah Seliger

32 Broadway, Suite 601
New York, NY 10004
Phone (212) 688-5640
Fax (212) 688-2548
www.jk-llp.com

September 23, 2026

**VIA ECF**
Hon. Hector Gonzalez
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: *Schwalb v. The City University of New York, 1:25 cv 2616 (HG)***

Your Honor:

This office represents Plaintiff Helen Schwalb ("Plaintiff") in the above-referenced matter. Pursuant to Your Honor's Individual Practices and the Court's August 3, 2026 Order, Defendant filed its renewed letter requesting a pre-motion conference regarding Defendant's anticipated motion for summary judgement (ECF #33). Plaintiff hereby renews her opposition to Defendant's letter requesting a pre-motion conference. Defendant's request must be denied because genuine issues of material fact exist regarding whether Plaintiff's non-reappointment was motivated by discrimination on the basis of Plaintiff's Jewish identity. Defendant's arguments fail both as to Plaintiff's prima facie case of discrimination and to Plaintiff's showing of pretext.

Specifically, Plaintiff will establish a prima facie case by showing that a) derogatory comments of a decision-maker establish discriminatory animus; b) in carrying out the non-renewal of Adjuncts in 2023, Defendant treated members of the protected class less favorably than non-members; and c) Defendant did not follow its own procedures for effectuating Plaintiff's non-renewal of her contract. For the same reasons, Plaintiff will also successfully show pretext. *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F3d 107, 124 (2d Cir 2004) (plaintiff may satisfy her burden to show pretext by relying upon the same evidence that comprised her prima facie case, without more); *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 38 (2d Cir. 1994) ("Pretext may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more.")(internal quotation marks and citations omitted).

Defendant argues that Plaintiff cannot show she was terminated under circumstances giving rise to an inference of discrimination because (1) the decisionmakers did not have knowledge of the religious identities of the Adjuncts considered for reappointment; (2) two of the decisionmakers had participated in previous votes to renew Plaintiff's appointment; and (3) Plaintiff cannot show she was treated less well than other similarly situated Adjuncts not in the

protected class. However, an inference of discrimination can be raised by numerous factual scenarios, including when a decision-maker has openly stated their racial animus, when employees in the protected class are significantly more impacted by an adverse action than those not in the protected class, when an employer diverges from its own policies, and when an employer has a written policy of considering a protected characteristic in hiring decisions. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F3d 29, 37 (2d Cir. 1994) (collecting cases).

It is undisputed that the decision not to reappoint six of the eleven Adjuncts who were up for a three-year renewal in May 2023 was made by three voting members of the Department's P&B Committee. The voting members of the P&B Committee in May 2023 were Barry Liebowicz, Arthur Adelburg and Tao Sun. Plaintiff testified that Liebowicz frequently and openly complained to her about the Jewish religion, expressed his pride that his children chose non-Jewish partners, and decried the politics of religious Jews, among other disparaging remarks. Liebowicz also often made remarks to Plaintiff saying, "you people" in reference to Plaintiff's identity as a religious Jew. These types of comments made by a decision-maker in an adverse employment action have been sufficient to establish an inference of discrimination in similar circumstances. *See Tolbert v. Smith,* 790 F.3d 427, 437 (2d Cir. 2015) (finding inference of discrimination based on allegations of racially biased, derogatory comments by the decisionmaker). Similar facts have also sustained a showing of pretext. *See Nadimkhan Pathan v. Connecticut*, 19 F Supp 3d 400, 425 (D. Conn. 2014) (summary judgment denied in Title VII case where evidence of derogatory remarks supported finding of pretext).

Defendant's stated policy of considering candidates' "background" in hiring decisions also points to an inference of discrimination and pretext. In August 2022, Wendy Hensel, Defendant's Executive Vice Chancellor & University Provost, sent a directive to CUNY leadership regarding how each school within CUNY should approach hiring new faculty. She wrote, "It is important to remember that one objective of these allocations [of funding for hiring new faculty] is to increase the diversity of our faculty in both tenure-track and lecturer lines, and that you and other leaders on your campuses are responsible for advancing these goals." (Exhibit 5 to Pechenkina Tr., CUNY00000480-CUNY00000481). Defendant's stated hiring strategy for lecturers in Fall 2023 states seven goals, one of which is to "[a]dvance the diversification of CUNY faculty." (Exhibit 4 to CUNY 30(b)(6) Dep., CUNY00000477-CUNY00000479). Plaintiff testified that the majority of the tenured professors in the Department are Jewish and have been in the department between 40 and 50 years. CUNY's stated goal of "increase[ing] the diversity" of its faculty necessarily means hiring people with different backgrounds than those currently employed. And CUNY admitted that "there was a different demographic applying for positions in the 70's and 80's" than those applying for positions now." (CUNY 30(b)(6) Tr. 49:5-12). Courts have deemed the existence of hiring policies based on a protected status as circumstantial evidence of discriminatory bias in decision making. *Toney v Clorox Co.*, 2025 U.S. App. LEXIS 9909, at *3 (9th Cir 2025) (summary judgment dismissed where plaintiff brought evidence of defendant's gender-based hiring strategy). Where the majority of the Department's tenured professors are white and Jewish, Plaintiff is white and Jewish, Defendant issued a directive to "increase the diversity" of the faculty, and Plaintiff was then not reappointed; there is a clear inference of discrimination.

The record also indicates that the Department's Jewish Adjuncts were four times more likely to not be reappointed than a non-Jewish Adjunct in 2023. In discrimination cases, when the outcome of an adverse employment action is overwhelmingly unfavorable to one protected class - even among a small group of employees, these statistics can be evidence of discriminatory intent when presented in conjunction with other circumstantial evidence. *See Alfaro-Flecha v. ORC Int'l Inc.*, 2016 U.S. Dist. LEXIS 486, at *13 (S.D.N.Y. 2016); *Stratton v. Dep't for the Aging for City of N.Y.*, 132 F.3d 869, 877 (2d Cir. 1997) ("Although statistics play a much more substantial role in disparate impact cases, they are admissible to support a claim of discrimination even in a disparate treatment case involving a single plaintiff."); *Sorlucco v. NY City Police Dept.,* 971 F2d 864, 872 (2d Cir. 1992) (even where the number of employees is small, statistics have probative force; and courts will consider the numbers relative to the ratio of members of the protected class versus nonmembers under consideration)*; see also Ingram v. Madison Square Garden Center, Inc.,* 709 F.2d 807, 810-11 (2d Cir. 1983) (small statistical sample, taken in conjunction with other evidence of bias, was sufficient to support an inference of discriminatory practice). Further, where the statistics involve a "comparison between persons evaluated by the same decision-maker," as they are here, the statistics are probative of intentional discrimination. *Smith v. Xerox Corp.*, 196 F.3d 358, 371 (2d Cir. 1999).

Defendant also cannot pretend not to know Plaintiff's religious affiliation after employing her for over a decade, during which she consistently took days off for all the Jewish holidays. Further, it is clear that at least one of the decisionmakers on the P&B Committee was very much aware of Plaintiff's religious identity. *See Gamble v. Fieldston Lodge Nursing & Rehab. Ctr.,* 697 F. Supp. 3d 112 (circumstantial evidence that employer knew or consciously avoided knowing plaintiff's protected status was sufficient to meet prima facie burden of showing knowledge).

Pursuant to the collective bargaining agreement governing Plaintiff's employment, CUNY must conduct a "comprehensive review" when making determinations not to reappoint a three-year Adjunct. That comprehensive review must include an assessment of the Department's "fiscal and programmatic needs" <u>and</u> the Adjunct's performance. Here, Defendant failed to consider Plaintiff's performance in its so-called comprehensive review, as required by the CBA. Under similar circumstances, where defendants failed to follow their own policies as they pertained to the plaintiff, plaintiffs have established a prima facie case of discrimination and pretext. *Tolbert v. Smith*, 790 F3d 427, 438 (2d Cir. 2015) (evidence of irregularities in following policies coupled with defendant's biased remarks is sufficient to establish prima facie discrimination); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F3d 107, 124-5 (2d Cir. 2004) (finding sexist remarks and procedural irregularities sufficient to rebut a non-discriminatory reason for denying tenure); *Luciano v. Olsten Corp.*, 110 F3d 210, 216-217 (2d Cir. 1997) (reasonable jury could infer defendant intentionally discriminated against plaintiff on basis of her status as a woman when it failed to review her performance for a promotion and subsequently discharged her).

Finally, the New York State Human Rights Law ("NYSHRL") aligns with the standards of the New York City Human Rights Law ("NYCHRL"). *See* Administrative Code of City of NY § 8-130 [a], [b]. Under the NYCHRL, unlawful discrimination must play "no role" in an employment decision. *Singh v. Covenant Aviation Sec., LLC*, 131 A.D.3d 1158, 1161 (2d Dept. 2015) (internal quotation marks omitted). Thus, a defendant's motion for summary judgment on

NYSHRL and NYCHRL claims must be analyzed under both the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and under the mixed-motive framework, which imposes a lesser burden on a plaintiff opposing such a motion. *Milord-Francois v. NY State Off. of the Medicaid Inspector Gen.*, 635 F Supp 3d 308, 331 (S.D.N.Y. 2022), citing *Sanderson-Burgess v. City of New York*, 102 N.Y.S.3d 678, 680. More significantly, it is not enough that a defendant proffers a legitimate business reason for the adverse employment action; a defendant must show that discrimination played *no role at all*. *See Harris v. N.Y.C. Hum. Resources Admin.*, 2024 U.S. Dist. LEXIS 58204, at *55 (S.D.N.Y. 2024). Thus, Plaintiff will clearly defeat summary judgment by presenting evidence that discriminatory intent was at least one motivating factor for Defendant's conduct.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

*/s/ Leah Seliger*
D. Maimon Kirschenbaum
Leah Seliger