UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HELEN SCHWALB,

*Plaintiff*,

- against -

CITY UNIVERSITY OF NEW YORK, QUEENS COLLEGE,

Defendant.

25 Civ. 2616 (HG)

# DEFENDANT THE CITY UNIVERSITY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUGDMENT

**LETITIA JAMES**
Attorney General
State of New York
*Attorney for Defendant CUNY*
28 Liberty Street
New York, New York 10005
(212) 416-8910

ELYCE N. MATTHEWS
Assistant Attorney General
*of Counsel*

# TABLE OF CONTENTS

**Page (s)**

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 2

The AIS Department ........ 2

Plaintiff's Non-Reappointment in May 2023 ........ 3

LEGAL STANDARD ........ 6

Summary Judgment ........ 6

Discrimination under Title VII ........ 7

ARGUMENT ........ 7

I. PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF DISCRIMINATION BASED ON RELIGION UNDER TITLE VII ........ 7

A. Plaintiff Cannot Show an Inference of Discrimination ........ 8

i. Plaintiff Fails to Present Evidence of Disparate Treatment of Similarly Situated Individuals ........ 9

ii. Plaintiff Fails to Show that Alleged Remarks Reflected Discriminatory Animus in Connection with the Non-reappointment Decision ........ 13

II. DEFENDANT HAS A LEGITIMATE, NON-DISCRIMINATORY REASON FOR PLAINTIFF'S NON-REAPPOINTMENT ........ 16

III. PLAINTIFF CANNOT DEMONSTRATE PRETEXT ........ 19

CONCLUSION ........ 23

Certification Pursuant to Local Civil Rule 7.1(c) ........ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdu-Brisson v. Delta Air Lines, Inc.*,
239 F.3d 456 (2d Cir. 2001)....................16

*Abdul-Hakeem v. Parkinson*,
2012 WL 234003 (D. Conn. Jan. 25, 2012)....................13

*Alfano v. Costello*,
294 F.3d 365 (2d Cir. 2002)....................17

*Allen v. Padilla*,
2025 WL 587085 (S.D.N.Y. Feb. 24, 2025)....................13

*Amna v. N.Y.S. Dep't of Health*,
2011 WL 4592787 (E.D.N.Y. Sept. 30, 2011) ....................12

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................6

*Babcock v. New York State Off. of Mental Health*,
2009 WL 1598796 (S.D.N.Y. June 8, 2009) ....................10

*Baluta v. Hicksville Union Free Sch. Dist.*,
2000 WL 335770 (E.D.N.Y. Mar. 15, 2000)....................22

*Beyer v. Cty. of Nassau*,
524 F.3d 160 (2d Cir. 2008)....................16

*Bickerstaff v. Vassar Coll.*,
196 F.3d 435 (2d Cir. 1999), (Dec. 22, 1999) ....................15

*Boise v. New York Univ.*,
2003 WL 22390792 (S.D.N.Y. Oct. 21, 2003)....................17, 19

*Boyar v. City of New York*,
2010 WL 4345737 (S.D.N.Y. Oct. 28, 2010)....................8

*Bramble v. Moody's Corp.*,
2024 WL 705955 (2d Cir. Feb. 21, 2024)....................17

*Brown v. Henderson*,
257 F.3d 246 (2d Cir. 2001)....................15

*Campbell v. All. Nat'l Inc.*,
107 F. Supp. 2d 234 (S.D.N.Y. 2000)....................................................................14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..........................................................................................6

*Chan v. N.Y.U. Downtown Hosp.*,
2006 WL 345853 (S.D.N.Y. Feb. 14, 2006)...........................................................12

*Clissuras v. City Univ. of N.Y.*,
359 F.3d 79 (2d Cir. 2004) (per curiam)................................................................1

*Conway v. Microsoft Corp.*,
414 F. Supp. 2d 450 (S.D.N.Y. 2006)....................................................................10

*Deitrick v. Inwood Farms, LLC*,
2026 WL 879158 (S.D.N.Y. Mar. 31, 2026) .........................................................14

*Ehrbar v. Forest Hills Hosp.*,
131 F. Supp. 3d 5 (E.D.N.Y. 2015) ...........................................................10, 21

*Eka v. Brookdale Hosp. Med. Ctr.*,
247 F. Supp. 3d 250 (E.D.N.Y. 2017) ..................................................................19

*Ezold v. Wolf, Block, Schorr & Solis–Cohen*,
983 F.2d 509 (3d Cir.1992)...................................................................................14

*Gelin v. Geithner*,
2009 WL 804144 (S.D.N.Y. Mar. 26, 2009) ....................................................... 8-9

*Goldschmidt v. New York State Affordable Hous. Corp.*,
380 F. Supp. 2d 303 (S.D.N.Y.2005).....................................................................20

*Grady v. Affiliated Cent., Inc.*,
130 F.3d 553 (2d Cir. 1997)..................................................................................14

*Greenway v. Buffalo Hilton Hotel*,
143 F.3d 47 (2d Cir. 1998)....................................................................................17

*Halkitis v. New York City Dep't of Educ.*,
2022 WL 392911 (S.D.N.Y. Feb. 9, 2022).............................................................23

*Harlen Assocs. v. Inc. Vill. of Mineola*,
273 F.3d 494 (2d Cir. 2001)..................................................................................10

*Henry v. Wyeth Pharms., Inc.*,
616 F.3d 134 (2d Cir. 2010)............................................................................ 14-16

*Howley v. Town of Stratford*,
217 F.3d 141 (2d Cir. 2000)....8

*Hyek v. Field Support Servs., Inc.*,
702 F. Supp. 2d 84 (E.D.N.Y. 2010)....14

*Israel v. Napolitano*,
2010 WL 3338638 (N.D.N.Y. Aug. 24, 2010)....20

*Jeffreys v. City of N.Y.*,
426 F.3d 549 (2d Cir. 2005)....7

*Johnson v. Schmid*,
750 F. App'x 12 (2d Cir. 2018)....7

*Lax v. City Univ. of N.Y.*,
2020 WL 6161253 (E.D.N.Y. Oct. 21, 2020).... 11-12

*MacKinon v. City of N.Y. Hum. Res. Admin*,
441 F. App'x 16 (2d Cir. 2011)....11

*Mandell v. County of Suffolk*,
316 F. 3d 368 (2d Cir. 2003).... 8-9

*Marmulszteyn v. Napolitano*,
523 Fed.Appx. 13 (2d Cir. 2013)....8

*Marseille v. Mount Sinai Health Sys., Inc.*,
2021 WL 3475620 (S.D.N.Y. Aug. 5, 2021)....23

*Martin v. State Univ. of N.Y.*,
704 F. Supp. 2d 202 (E.D.N.Y.2010)....10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)....7

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)....7

*Meiri v. Dacon*,
759 F.2d 989 (2d Cir. 1985)....9

*Missick v. City of New York*,
707 F. Supp. 2d 336 (E.D.N.Y.2010)....22

*Partridge v. HIP of Greater New York*,
2000 WL 827299 (S.D.N.Y. June 26, 2000)....16

*Perelman v. Visa USA, Inc.*,
2026 WL 696886 (S.D.N.Y. Mar. 12, 2026) ....................12

*Ralkin v. N.Y.C. Transit Auth.*,
62 F. Supp. 2d 989 (E.D.N.Y.1999) ....................22

*Raskin v. Wyatt Co.*,
125 F.3d 55 (2d Cir. 1997)....................15

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000)....................19

*Rosen v. Thornburgh*,
928 F.2d 528 (2d Cir. 1991)....................8

*Ruggieri v. Harrington*,
146 F. Supp. 2d 202 (E.D.N.Y. 2001) ....................19

*Saqib v. Stein deVisser & Mintz, PC*,
2010 WL 2382253 (2d Cir. June 15, 2010) ....................8

*Scotto v. Alemenas*,
143 F.3d 105 (2d Cir. 1998)....................7

*Sethi v. Narod*,
12 F. Supp. 3d 505 (E.D.N.Y. 2014) ....................12

*Shapiro v. City of N.Y.*,
649 F. App'x 71 (2d Cir. 2016) ....................7

*Shaw v. McHugh*,
2015 WL 1400069 (S.D.N.Y. Mar. 26, 2015) ....................10

*Shumway v. United Parcel Serv., Inc.*,
118 F.3d 60 (2d Cir. 1997)....................10

*Sicular v. N.Y.C. Dep't of Homeless Servs.*,
2010 WL 423013 (S.D.N.Y. Feb. 4, 2010), *report and recommendation adopted*, 2010 WL 2179962 (S.D.N.Y. May 28, 2010), *aff'd*, 455 Fed. Appx. 129 (2d Cir. 2012) ....................9

*Smith v. New York & Presbyterian Hosp.*,
440 F. Supp. 3d 303 (S.D.N.Y. 2020)....................14

*Sotomayor v. City of New York*,
862 F. Supp. 2d 226 (E.D.N.Y. 2012) ....................22

*Spiegler v. Israel Disc. Bank of New York*,
2003 WL 21983018 (S.D.N.Y. Aug.19, 2003) ..... 10

*St. Mary's Honor Ctr. v. Hicks*,
509 U.S. 502 (1993) ..... 21

*Staub v. Proctor Hosp.*,
562 U.S. 411 (2011) ..... 20

*Terry v. Ashcroft*,
336 F. 3d 128 (2d Cir. 2003) ..... 16

*Ugactz v. United Parcel Service, Inc.*,
2013 WL 1232355 (E.D.N.Y. Mar. 26, 2013) ..... 11

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
570 U.S. 338 (2013) ..... 20

*Weber v. City of New York*,
973 F. Supp. 2d 227 (E.D.N.Y. 2013) ..... 8, 20

*Weinstock v. Columbia Univ*,
224 F.3d 33 (2d Cir. 2000) ..... 7, 20

*White v. Roosevelt Union Free Sch. Dist. Bd. of Educ.*,
2025 WL 552744 (E.D.N.Y. Feb. 19, 2025) ..... 19

*Woodman v. WWOR-TV, Inc.*,
411 F.3d 69 (2d Cir. 2005) ..... 12

**Federal Statutes**

42 U.S.C. § 2000 *et seq* ..... passim

**Rules**

Fed. R. Civ. P.
56 ..... 1, 6
56(a) ..... 6

E.D.N.Y. Loc. Civ. R. 7.1(c) ..... 24

Defendant the City University of New York ("CUNY")[1] respectfully submits this memorandum of law in support of its motion for summary judgment pursuant to Fed. R. Civ. P. 56.[2]

## PRELIMINARY STATEMENT

Plaintiff Helen Schwalb ("Plaintiff") was hired as an adjunct lecturer in the Accounting and Information Systems Department (the "AIS Department" or "Department") at Queens College in 2012. After being reappointed several times, the Department declined to reappoint Plaintiff to another three-year adjunct appointment in 2023 due to programmatic and financial constraints in the Department including, *inter alia*, budget cuts and steadily decreasing enrollment. Plaintiff now claims that she was non-reappointed because of religious discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. ("Title VII").

As set forth more fully below, Plaintiff's claim fails as a matter of law. Critically, Plaintiff cannot establish a *prima facie* claim of discrimination based on her religion. There is no evidence that religion played any role whatsoever in the decision not to reappoint Plaintiff to her part-time adjunct faculty position. Rather, the undisputed evidence shows that CUNY had a legitimate, non-discriminatory reason for this employment decision—the fiscal and programmatic needs of the Department—and Plaintiff cannot show that this legitimate reason was false or a mere pretext for religion-based discrimination. As detailed below, the undisputed facts show that enrollment in the

---

[1] Queens College is a senior college in the CUNY system and is not a "legally cognizable entity apart from CUNY." *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 81 n.2 (2d Cir. 2004) (per curiam), cert. denied, 543 U.S. 987 (2004).

[2] Also submitted in support of this motion are Defendant's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("56.1") and the Declarations of Elyce Matthews ("Matthews Decl."), Ivy Huang ("Huang Decl."), and Arthur Adelberg ("Adelberg Decl."), and the exhibits thereto.

Department had decreased, the Department was offering fewer classes, the Dean informed the Chair of impending budget cuts, and full-time faculty had been hired who were able to teach the classes that had previously been taught by part-time adjunct faculty, such as Plaintiff.

Accordingly, there is no genuine issue of material fact, and Plaintiff's claim should be dismissed.

## STATEMENT OF FACTS

Plaintiff was hired as an adjunct lecturer in the AIS Department at Queens College in 2012. 56.1 ¶ 1; First Amended Complaint, dated June 12, 2025 ("Compl."), ¶ 11 (ECF No. 10); Deposition of Plaintiff Helen Schwalb, taken on October 27, 2025 ("Pl. Dep."), at 27:2-5 (Ex. A to Declaration of Elyce N. Matthews, dated October 22, 2026 ("Matthews Decl.")). She was originally hired for a one-semester term and was subsequently reappointed multiple times through 2017. 56.1 ¶ 1. Plaintiff was reappointed for a three-year term in 2017, for the term Fall 2017 – Spring 2020, and was reappointed again in June 2020, for the term Fall 2020 – Spring 2023. 56.1 ¶ 2; Pl. Dep., at 27:17-22 (Ex. A to Matthews Decl.).

***The AIS Department***

Between 2022 and 2023, the Department hired seven full-time faculty members: four tenure-track faculty members and three full-time lecturers. 56.1 ¶ 3; Declaration of Ivy Huang, dated January 14, 2026 ("Huang Decl."), ¶¶ 3, 4; Deposition of CUNY's 30(b)(6) witness, Ekaterina Pechenkina, taken on November 21, 2025 ("CUNY 30(b)(6) Dep.") at 22:3-12 (Ex. B to Matthews Decl.). Between 2015 and 2023, enrollment in the Department's classes decreased by approximately 50%. 56.1 ¶ 4; April 24 and May 1, 2023 Emails from Ivy Huang to P&B Committee (Bates No. CUNY 00000396 – 00000399 and CUNY 00000430 – 00000431) (Ex. A to Huang Decl.). When a department has lower enrollment, it has fewer students and, thus, it offers

fewer classes. 56.1 ¶ 5; CUNY 30(b)(6) Dep. at 21:19-22:2 (Ex. B to Matthews Decl.). For example, as the undisputed Queens College Course Information System shows, the Department's numbers reflected lower enrollment and fewer course offerings during this period:

| Semester | Course Sections Offered by Department | Department Enrollment |
|---|---|---|
| Fall 2021 | 111 | 3,292 |
| Fall 2022 | 101 | 2,522 |
| Fall 2023 | 84 | 2,212 |
| Fall 2024 | 74 | 2,209 |

56.1 ¶ 6. Huang Decl. ¶ 11.

***Plaintiff's Non-Reappointment in May 2023***

In Spring 2023, Plaintiff's three-year appointment was coming to an end, and she was under consideration for a new three-year appointment in the AIS Department, along with ten other adjunct faculty members whose three-year appointments were ending. 56.1 ¶ 7; April 24 and May 1, 2023 Emails from Ivy Huang to P&B Committee (Bates No. CUNY 00000396 – 00000399 and CUNY 00000430 – 00000431) (Ex. A to Huang Decl.). The decision of which adjuncts in the AIS Department are reappointed or non-reappointed to three-year appointments is made by the Department's Personnel and Budget Committee ("P&B Committee"). 56.1 ¶ 8; Deposition of Ivy Huang, taken on November 11, 2025 ("Huang Dep.") at 27:25-28:11; 32:11-33:5 (Ex. C to Matthews Decl.); Huang Decl. ¶ 6. There is no presumption of continuous appointments for adjunct professors. 56.1 ¶ 9; Appendix E to the Agreement between the City University of New York and the Professional Staff Congress/CUNY (Bates No. CUNY 240) (Ex. D to Matthews Decl.). In May 2023, the members of the Department's P&B Committee were Arthur Adelberg,

Barry Leibowicz, Ivy Huang, Fang Sun, and Tao Sun. 56.1 ¶ 10; Huang Dep. at 36:22-25; 86:21-87:4 (Ex. C to Matthews Decl.); Huang Decl. ¶ 8. Ivy Huang was the Department Chair. Huang Dep. at 9:23-25 (Ex. C to Matthews Decl.); Huang Decl. ¶ 1.

In advance of the P&B Committee's vote on the reappointment of the eleven adjuncts up for consideration, Dr. Huang provided the P&B Committee with data regarding, *inter alia*, the names of the eleven adjuncts who were eligible for new three-year appointments, the teaching specializations of full-time faculty members, and the Department's course assignments for the period 2020–2023. 56.1 ¶ 11; April 24 and May 1, 2023 Emails from Ivy Huang to P&B Committee (Bates No. CUNY 00000396 – 00000399 and CUNY 00000430 – 00000431) (Ex. A to Huang Decl.). In the Spring 2023, the Department was informed by the Dean that it should anticipate a 15-20% budget decrease for the academic year beginning in the Fall 2023 (2023-24). 56.1 ¶ 12; April 24 and May 1, 2023 Emails from Ivy Huang to P&B Committee (Bates No. CUNY 00000396 – 00000399 and CUNY 00000430 – 00000431) (Ex. A to Huang Decl.). Generally, when the Department has a budget cut, it means that the Department decreases the number of courses offered. 56.1 ¶ 13; Huang Dep. at 78:2-11 (Ex. C to Matthews Decl.); Huang Decl. ¶¶ 10, 11.

In the Spring 2023, when considering whether to reappoint the adjunct professors whose appointments were ending, the P&B Committee looked at the teaching specializations of full-time faculty members, because full-time faculty members are contractually obligated to teach a specific number of classes each semester pursuant to the union contract. 56.1 ¶ 14; Huang Dep. at 68:22-70:20 (Ex. C to Matthews Decl.); Huang Decl. ¶¶ 9, 13. Of the 20 full-time faculty members in the Department, 16 of them specialized in Financial Accounting, meaning they could teach Financial Accounting classes. 56.1 ¶ 15; April 24 and May 1, 2023 Emails from Ivy Huang to

P&B Committee (Bates No. CUNY 00000396 – 00000399 and CUNY 00000430 – 00000431) (Ex. A to Huang Decl.); Huang Decl. ¶ 13; CUNY 30(b)(6) Dep. at 27:7-22 (Ex. B to Matthews Decl.). The P&B Committee then looked at the adjunct professors' course assignments for the previous six semesters to determine which classes should be re-assigned to full-time faculty members. 56.1 ¶ 16; Huang Dep. at 68:22-70:20 (Ex. C to Matthews Decl.); Deposition of Arthur Adelberg, taken on November 12, 2025 ("Adelberg Dep.") at 13:21-14:21 (Ex. E to Matthews Decl.); CUNY 30(b)(6) Dep. at 40:19-42:5 (Ex. B to Matthews Decl.); Huang Decl. ¶ 13; Declaration of Arthur Adelberg, dated January 14, 2026 ("Adelberg Decl."), ¶ 12.

In the Spring 2023, after looking at the teaching specializations of the full-time faculty and the prior course assignments for adjunct faculty, the P&B Committee voted to reappoint five adjunct professors in the Department to three-year appointments and to non-reappoint six professors in the Department. 56.1 ¶ 17; Huang Decl. ¶¶ 16, 17; Adelberg Decl. ¶¶ 11, 12. With respect to the six professors who were not reappointed, four had taught only financial or managerial accounting courses in the prior three academic years. Full-time faculty were able and available to teach those courses, and therefore, adjunct faculty were not necessary to teach them. 56.1 ¶ 18; Huang Decl. ¶ 17; Adelberg Decl. ¶ 12. Specifically, in the previous three years, Plaintiff had only taught financial accounting courses, and the Department had recently hired full-time faculty who were able to teach those courses.[3] 56.1 ¶ 18. The Department reappointed five adjunct professors, because their services were still needed due to their teaching specialties, including both subject-matter and level (graduate versus undergraduate). 56.1 ¶ 19; Huang Decl. ¶ 16; Adelberg Decl. ¶ 17; CUNY 30(b)(6) Dep. at 27:7-28:13 (Ex. B to Matthews Decl.). The P&B Committee, including Arthur Adelberg, Barry Leibowicz, and Tao Sun unanimously voted to non-reappoint Plaintiff.

[3] At no time did Plaintiff apply for any full-time position.

56.1 ¶ 20; Huang Decl. ¶¶ 8, 15, 17; Adelberg Decl. ¶¶ 5, 9. Arthur Adelberg and Barry Leibowicz had been on the P&B Committee in 2020 when the P&B Committee voted to appoint Plaintiff to a second three-year appointment. 56.1 ¶ 21; Huang Decl. ¶ 7; Adelberg Decl. ¶ 13. The P&B Committee did not discuss the religion of any adjunct faculty member during the reappointment consideration process nor did religion play a role in the Committee's decision to vote to reappoint or non-reappoint any of the adjunct faculty members. 56.1 ¶ 22; Huang Decl. ¶ 19; Adelberg Decl. ¶ 14.

## LEGAL STANDARDS

### Summary Judgment

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56. Thus, "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" cannot survive summary judgment because "[i]n such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citation omitted). In such cases, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323 (citation omitted).

Significantly, a plaintiff cannot defeat summary judgment merely by showing the existence of some alleged factual dispute between the parties but must establish through the evidentiary record a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986); *see also* Fed. R. Civ. P. 56(a). To avoid summary judgment, the non-moving party must

"do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Alemenas*, 143 F.3d 105, 114 (2d Cir. 1998). "[T]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005).

**Discrimination under Title VII**

Plaintiff's Title VII claim is "governed by the familiar burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)." *Shapiro v. City of N.Y.*, 649 F. App'x 71, 72 (2d Cir. 2016). "First, an employee must present a *prima facie* case of [] discrimination . . . Second, the burden shifts to the employer to give a legitimate, non-discriminatory reason for its actions. Third, if the employer does so, the burden then shifts back to the plaintiff to show that the employer's explanation is a pretext for [] discrimination. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Johnson v. Schmid*, 750 F. App'x 12, 16 (2d Cir. 2018). To meet this ultimate burden, "plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action].'" *Weinstock v. Columbia Univ*, 224 F.3d 33, 42 (2d Cir. 2000) (internal quotations omitted).

## ARGUMENT

### I. PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF DISCRIMINATION BASED ON RELIGION UNDER TITLE VII.

At the first stage of the *McDonnell Douglas* inquiry, a plaintiff has the burden of establishing a *prima facie* case of discrimination based on disparate treatment by showing that (1)

she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination. *Weber v. City of New York*, 973 F. Supp. 2d 227, 251 (E.D.N.Y. 2013) (citing *Marmulszteyn v. Napolitano*, 523 Fed.Appx. 13, 15 (2d Cir. 2013)); *Mandell*, 316 F.3d 368, 377-78 (citing *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000); *Rosen v. Thornburgh*, 928 F.2d 528, 532 (2d Cir. 1991). For the reasons described below, the undisputed material facts preclude Plaintiff from establishing that the circumstances of her non-reappointment give rise to an inference of discrimination and, accordingly, Defendant is entitled to summary judgment.

**A. Plaintiff Cannot Show an Inference of Discrimination**

"Conclusory and speculative allegations will not suffice to demonstrate discriminatory intent." *Gelin v. Geithner*, 2009 WL 804144, at *15 (S.D.N.Y. Mar. 26, 2009), *aff'd*, 376 F. App'x 127 (2d Cir. 2010). "Rather, Plaintiff 'must point to facts that suggest' that the adverse action was motivated, at least in part, by discriminatory animus." *Id.* (collecting cases that found no inference of discrimination because plaintiff presented no evidence supporting discriminatory animus). While inference of discrimination is "a flexible [standard]" and "no one particular type of proof is required," courts are clear that "a plaintiff's own subjective belief that he was discriminated against because of his religion is insufficient to sustain a religious discrimination claim." *Weber*, 973 F. Supp. 2d at 254 (citing *Saqib v. Stein deVisser & Mintz, PC*, 2010 WL 2382253, at *1 (2d Cir. June 15, 2010) (holding that in order "[t]o defeat summary judgment" on plaintiff's claim for discrimination under Title VII plaintiff "may not rely on conclusory allegations or unsubstantiated speculation")); *Boyar v. City of New York*, 2010 WL 4345737, at *4 (S.D.N.Y. Oct. 28, 2010) (finding that "[w]hile [plaintiff] states his belief that his [Jewish] religion played a role in these

decisions, personal belief is insufficient to defeat defendants' summary judgment motion" on plaintiff's discrimination claim (citation and internal quotation marks omitted)); *Sicular v. N.Y.C. Dep't of Homeless Servs.*, 2010 WL 423013, at *19 (S.D.N.Y. Feb. 4, 2010) ("[The plaintiff's] personal belief ... that his being Jewish played into the prejudices of the individual defendants and reinforced their animosity against him is insufficient to defeat defendants' summary judgment motion."), *report and recommendation adopted*, 2010 WL 2179962 (S.D.N.Y. May 28, 2010), *aff'd*, 455 Fed. Appx. 129 (2d Cir. 2012); *see also Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (holding that "conclusory allegations of [religious] discrimination are insufficient" to defeat summary judgment, and "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of [religious] discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases").

A plaintiff may establish an inference of discrimination by (i) demonstrating that similarly situated employees were treated more favorably; (ii) showing that there were remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus; or (iii) proving that there were other circumstances giving rise to an inference of discrimination. *Gelin*, 2009 WL 804144 at *15 (citations and internal quotation marks omitted). Plaintiff fails to make any of these showings.

**i. Plaintiff Fails to Present Evidence of Disparate Treatment of Similarly Situated Individuals**

There is no evidence that any similarly situated, non-Jewish individuals were treated differently from Plaintiff. While "[a] showing of disparate treatment – that is, a showing that an employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group' – is a recognized method of raising an inference of discrimination," *Mandell v. County of Suffolk*, 316 F. 3d 368, 379 (2d Cir. 2003), to assert a valid disparate treatment claim, the

individuals with whom Plaintiff attempts to compare herself must be similarly situated "*in all material respects*." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (emphasis added). The "employees' positions, job responsibilities, and reporting structures are relevant" to the analysis of whether purported comparators are similarly situated. *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 21 (E.D.N.Y. 2015); *see also Shaw v. McHugh*, 2015 WL 1400069, at *9 (S.D.N.Y. Mar. 26, 2015) ("Distinctions in assignment, reporting structure, responsibilities and workplace standards undercut Plaintiff's argument that his comparators are similarly situated."); *Martin v. State Univ. of N.Y.*, 704 F. Supp. 2d 202, 226 (E.D.N.Y.2010) (proffered comparators had "marked differences" in job responsibilities). "To prevail, the plaintiff must at least provide an objectively identifiable basis for comparability between himself and other employees." *Babcock v. New York State Off. of Mental Health,* 2009 WL 1598796, at *4 (S.D.N.Y. June 8, 2009) (internal quotation marks and citations omitted). "[A] court can properly grant summary judgment where no reasonable jury could find the similarly situated prong met." *Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 460 (S.D.N.Y. 2006) (citing *Spiegler v. Israel Disc. Bank of New York,* 2003 WL 21983018, at *2 (S.D.N.Y. Aug.19, 2003) (citing *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001))).

Plaintiff does not and cannot identify a similarly situated comparator who was treated differently. Pl. Depo at 54:3-6; 57:2-16. Faced with the irrefutable facts concerning the legitimate, non-discriminatory budgetary and programmatic concerns that led to Plaintiff's non-reappointment, Plaintiff relies on purported comparisons between who was reappointed and who was non-reappointed in 2023. *See, generally*, Pl. Dep. 53:3-58:17 (Ex. A to Matthews Decl.). But Plaintiff fails to identify any individuals who (i) were not Jewish, (ii) taught managerial and financial accounting, (iii) were up for reappointment in 2023, and (iv) were reappointed.

Accordingly, Plaintiff cannot raise an inference of discrimination based on disparate treatment of similarly situated employees. *See Ugactz v. United Parcel Service, Inc.*, 2013 WL 1232355, at *16 (E.D.N.Y. Mar. 26, 2013) ("Plaintiff's failure to establish, beyond conclusory allegations, that similarly situated younger employees were [treated differently] is fatal to Plaintiff's claims.") (collecting cases).

First, Plaintiff fails to proffer any admissible evidence regarding the religions of any purported comparators and therefore cannot show they are outside her protected class. *MacKinon v. City of N.Y. Hum. Res. Admin*, 441 F. App'x 16, 17-18 (2d Cir. 2011) (no inference of discrimination where plaintiff failed to provide facts regarding the ages of his purported comparators and how they are similarly situated); *see also Lax v. City Univ. of N.Y.*, 2020 WL 6161253, at *7 (E.D.N.Y. Oct. 21, 2020) ("Plaintiff offers zero evidence concerning the religious identity of [her purported comparators]."). Plaintiff's own assumptions about certain employees' religion is not admissible evidence sufficient to create an issue of fact. Pl. Dep. at 54:24-55:19 (Ex. A to Matthews Decl.). And critically, there is no admissible evidence that the decisionmakers knew the religious identities of the adjunct faculty members who were reappointed or non-reappointed. *See, e.g.*, Adelberg Dep. at 27:15-19 (Q: "Do you know if any of these adjuncts on this list are Jewish?" A: Other than maybe based on their name, and it would be just a guess on my part. I don't know.") (Ex. E to Matthews Decl.). Plaintiff merely testified that "you could . . . figure it out" and "they're not stupid." Pl. Dep. at 54:24-55:19 (Ex. A to Matthews Decl.). (Q: "How do you know that they knew [the religions of the adjunct professors up for reappointment in 2023]?" A: "Because, you know, you could…figure it out. I mean, they're not stupid….They knew which adjuncts were what. I mean, you just look at the – you just know. You know who taught, you know – I don't know. It's a social thing. Everyone knew in the end, without clarification who was Jewish

and who was not Jewish."). That is inadequate. *See Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 82 (2d Cir. 2005) ("[A] defendant's discriminatory intent cannot be inferred, even at the *prima facie* stage, from circumstances unknown to the defendant."); *Perelman v. Visa USA, Inc.*, 2026 WL 696886, at *6 (S.D.N.Y. Mar. 12, 2026) (plaintiff's speculation that decisionmakers inferred protected characteristics insufficient to state a claim for discrimination).

Second, it is undisputed that the individuals who were reappointed taught different courses within the Department, and thus were not similarly situated to Plaintiff in all material respects. *See Chan v. N.Y.U. Downtown Hosp.*, 2006 WL 345853, at *5-6 (S.D.N.Y. Feb. 14, 2006) (granting summary judgment where plaintiff failed to offer "probative comparative information" about herself and her purported comparators, including that "their positions are comparable in terms of job requirements, responsibilities, etc."); *Sethi v. Narod*, 12 F. Supp. 3d 505, 546-47 (E.D.N.Y. 2014) (no inference of discrimination where plaintiff failed to provide evidence that his purported comparators were outside of his protected class and had similar job duties and responsibilities); *Lax*, 2020 WL 6161253, at *7 ("[T]here is also no evidence in the record that would allow the Court to conclude that any of these individuals are similarly-situated to Plaintiff. The record is devoid of any evidence concerning their titles, years of service, or other indicia of similarity. Absent this pertinent information, these individuals cannot serve as comparators in support of Plaintiff's claims."); *Amna v. N.Y.S. Dep't of Health*, 2011 WL 4592787, at *8 (E.D.N.Y. Sept. 30, 2011) (no inference of discrimination where plaintiff failed to produce evidence that demonstrated she was similarly situated to her purported comparators). Indeed, the undisputed facts show that the main basis for the reappointment decisions was the courses taught by the adjuncts up for reappointment in 2023.

In sum, Plaintiff has failed to proffer any evidence that similarly situated individuals

outside her protected class were treated differently and thus cannot raise an inference of discrimination based on disparate treatment. *See Abdul-Hakeem v. Parkinson*, 2012 WL 234003, at *5 (D. Conn. Jan. 25, 2012) (holding that Plaintiff could not meet her burden of demonstrating an inference of discrimination where Plaintiff identified purported comparators but provided no factual support that the alleged comparators performed similar job functions or were treated more favorably.). Therefore, her discrimination claim fails as a matter of law.

**ii. Plaintiff Fails to Show that Alleged Remarks Reflected Discriminatory Animus in Connection with the Non-reappointment Decision**

The record is entirely devoid of any evidence connecting the non-reappointment decision with any discriminatory, anti-Jewish animus. In an attempt to salvage her claim, Plaintiff relies on two alleged remarks: (1) that Barry Leibowicz, a full tenured professor and member of the P&B Committee made comments stereotyping and generalizing religious Jewish people as a group and (2) that Scott Ruthizer, a Lecturer in the Department, asked Plaintiff if she speaks Yiddish at home in 2012 and, on another occasion, came into Plaintiff's office and "star[ed] at [her] head as if trying to see if [she] was wearing a wig." Plaintiff's Counterstatement of Material Facts, ¶ 7 (ECF No. 35); Declaration of Helen Schwalb, ¶¶ 6, 7 ("Schwalb Decl.") (Ex. E to the Declaration of Leah Seliger, dated February 23, 2025 [sic] ("Seliger Decl.")) (ECF No. 36-5). However, this fails to satisfy Plaintiff's burden to establish an inference of discriminatory animus for multiple reasons.

First, with respect to Barry Leibowicz, the "same actor inference" undercuts any inference of discrimination. "When the same actor hires a person already within the protected class, and then later fires that same person, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." *Allen v. Padilla*, 2025 WL 587085, at *9 (S.D.N.Y. Feb. 24, 2025). Barry Leibowicz and Arthur Adelberg were both on the P&B Committee in 2020 when they, and the P&B Committee, voted to reappoint Plaintiff to a three-year appointment. Adelberg

Decl. ¶ 13. This belies any inference of a discriminatory motive with respect to Plaintiff's subsequent non-reappointment. *See Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997) (when the same person hired and fired the plaintiff, "it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire"); *Hyek v. Field Support Servs., Inc.*, 702 F. Supp. 2d 84, 102 (E.D.N.Y. 2010) (applying same-actor inference where person who fired the plaintiff had previously promoted the plaintiff and recommended a salary increase), *aff'd*, 461 F. App'x 59 (2d Cir. 2012).

Second, none of the remarks is sufficient to establish discriminatory animus. In analyzing whether isolated "stray remarks" are probative of discriminatory intent, courts consider four factors, none of which are dispositive: (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process). *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010); *Deitrick v. Inwood Farms, LLC*, 2026 WL 879158, at *8 (S.D.N.Y. Mar. 31, 2026); *Smith v. New York & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 337 (S.D.N.Y. 2020); *Campbell v. All. Nat'l Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) (citing *Ezold v. Wolf, Block, Schorr & Solis–Cohen*, 983 F.2d 509, 545 (3d Cir.1992) ("Stray remarks by non-decision-makers or by decision-makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision."). The purported comments relied upon by Plaintiff do not meet any of these factors, and thus fail to raise an inference of discrimination.

The substance of the remarks is not patently indicative of discriminatory animus. *See* Pl. Dep. at 38:10-22 (Ex. A to Matthews Decl.) (claiming that Professor Liebowicz said "You people

you make everyone feel so guilty about everything. Why do you people do that?", "[Y]ou people are so weird, you make a blessing when you go to the bathroom", "You people you're always – you are always voting Republican, Why don't you vote Democrat like I do?", "[Y]ou know I love Catholic people."). While a reasonable juror "might have found the remark[s] offensive, it is less clear that a reasonable juror would have found [them] indicative of a discriminatory animus." *Henry*, 616 F.3d at 150. Plaintiff herself called Professor Leibowicz "a demented old man" and "a self-hating Jew." Pl. Dep. at 39:18-25 (Ex. A to Matthews Decl.). Finally, it is undisputed that the purported remarks are completely unrelated to the employment decision at issue. Therefore, they do not evince any discriminatory animus with respect to the unanimous P&B Committee vote not to reappoint Plaintiff in 2023.

Similarly, the allegations Plaintiff makes against Scott Ruthizer do not demonstrate discriminatory intent because they fail all four of the factors listed above. Plaintiff alleges, for the first time in her summary judgment opposition, that Scott Ruthizer made comments regarding her religion; however, these comments do not rise to the level required by caselaw.[4] First, Professor Ruthizer was not a decisionmaker and played no role in Plaintiff's non-reappointment. 56.1 ¶¶ 10,

---

[4] Plaintiff did not allege that Professor Ruthizer made any allegedly discriminatory comments in her original Complaint or her Amended Complaint. Despite being asked numerous times at her deposition about individuals she alleges made discriminatory comments or otherwise acted in a discriminatory manner (*see, e.g.*, Pl. Dep. at 40:10-13 (Ex. A to Matthews Decl.)), Plaintiff made absolutely no mention of Professor Ruthizer. Indeed, Plaintiff did not claim that Professor Ruthizer had made any comments until a declaration filed in conjunction with her summary judgment opposition. However, Plaintiff may not "create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts [her] previous deposition testimony." *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997). While these new allegations do not permit the Court to find an inference of discrimination for the reasons set forth herein, regardless, even if they "might otherwise defeat a motion for summary judgment[, they] will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment[.]" *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). Accordingly, even if these comments rose to the level required by caselaw, which they do not, they cannot create an issue of fact regardless. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 454 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999).

20; Huang Decl. ¶¶ 8, 15, 17; Adelberg Decl. ¶¶ 5, 9. Second, Plaintiff alleges that Ruthizer inquired as to whether she spoke Yiddish at home in 2012, *more than a decade prior to her non-reappointment*.[5] Third, this question is not indicative of discriminatory animus. *See Henry*, 616 F.3d at 150. And, regardless, as already noted, Ruthizer was not a decisionmaker and had no role in Plaintiff's non-reappointment, and thus his statements were not related to the non-reappointment decision. Accordingly, these purported remarks are insufficient to raise an issue of fact concerning discriminatory intent with respect to the non-reappointment decision.

In sum, the undisputed facts show that Plaintiff cannot make out a *prima facie* case of religious discrimination because she cannot demonstrate an inference of discrimination.

## II. DEFENDANT HAS A LEGITIMATE, NON-DISCRIMINATORY REASON FOR PLAINTIFF'S NON-REAPPOINTMENT

Even if Plaintiff could have made out a *prima facie* case, it would be a "pyrrhic victory because she cannot rebut the legitimate, nondiscriminatory reason" that the Department did not reappoint her. *Partridge v. HIP of Greater New York*, 2000 WL 827299, at *4 (S.D.N.Y. June 26, 2000). If a plaintiff makes the *prima facie* showing, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *Terry v. Ashcroft*, 336 F. 3d 128, 140 (2d Cir. 2003). The employer's burden to rebut the plaintiff's *prima facie* showing is "'de minimis': it is 'neither onerous, nor intended to be rigid, mechanized or ritualistic.'" *Beyer v. Cty. of Nassau,* 524 F.3d 160, 163 (2d Cir. 2008) (quoting *Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 467 (2d Cir. 2001)). "The employer need not *persuade* the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote

[5] Plaintiff alleges another incident wherein he allegedly "came to [Plaintiff's] office and walked in a circle around [her], starting at [her] head as if trying to see if [Plaintiff] was wearing a wig." Schwalb. Decl., ¶ 6, 7 (Ex. E to Seliger Decl.) (ECF No. 36-5). Plaintiff does not provide a date for this alleged incident nor does she provide any admissible evidence for her speculation about this purported incident.

lawful behavior." *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2d Cir. 1998) (emphasis in original).

Here, the undisputed evidence demonstrates that the fiscal and programmatic needs of the Department led to Plaintiff's non-reappointment. 56.1 ¶¶ 17-19; Huang Decl. ¶ 16, 17; Adelberg Decl. ¶ 11, 12. Courts recognize that universities are entitled to a degree of deference in the exercise of academic judgment. *Boise v. New York Univ.*, 2003 WL 22390792, at *6 (S.D.N.Y. Oct. 21, 2003), *aff'd sub nom. Boise v. Boufford*, 121 F. App'x 890 (2d Cir. 2005). Courts further recognize it is not their role to act as a "superpersonnel department." *Bramble v. Moody's Corp.*, 2024 WL 705955, at *2 (2d Cir. Feb. 21, 2024) (quoting *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) (noting that the court's "role is to prevent unlawful hiring practices, not to act as a superpersonnel department that second guesses employers' business judgments," and therefore courts are not to consider "personnel decisions that lack a linkage or correlation to the claimed ground of discrimination" (internal citations omitted)). Thus, there is no triable issue of fact concerning the legitimate, non-discriminatory reason for Plaintiff's non-reappointment.

First, it is undisputed that the Department's enrollment had significantly decreased over the past several years; between 2015 and 2023, enrollment in the Department's classes decreased by approximately 50%. 56.1 ¶ 4; Huang Decl. ¶ 10. When a department has lower enrollment, it has fewer students and, thus, it offers fewer classes. 56.1 ¶ 5; CUNY 30(b)(6) Dep. at 21:19-22:2 (Ex. B to Matthews Decl.). For example, as the Queens College Course Information System shows, the Department's numbers fell from an enrollment of 3,292 students and 111 course sections in Fall 2021 to an enrollment of 2,212 students and 84 course sections in Fall 2023. 56.1 ¶ 6; Huang Decl. ¶ 11*; see also* chart on p. 2-3, *supra*. Thus, it follows, that when a department offers fewer classes, it needs fewer professors. Crucially, the Department must first ensure that its full-time

faculty members maintain the contractually-obligated minimum number of teaching hours. Huang Decl. ¶ 13.

Second, it is undisputed that in the Spring 2023, the Department was informed by the Dean that it should anticipate a 15-20% budget decrease for the academic year beginning in the Fall 2023 (2023-24). 56.1 ¶ 12; Huang Decl. ¶ 10; April 24 and May 1, 2023 Emails from Ivy Huang to P&B Committee (Bates No. CUNY 00000396 – 00000399 and CUNY 00000430 – 00000431) (Ex. A to Huang Decl.). Generally, when the Department has a budget cut, it means that the Department decreases the number of courses offered. 56.1 ¶ 13; Huang Dep. at 78:2-11 (Ex. C to Matthews Decl.); Huang Decl. ¶¶ 10, 11.

Finally, it is undisputed that between 2022 and 2023, the Department hired seven full-time faculty members: four tenure-track faculty members and three full-time lecturers. 56.1 ¶ 3; Huang Decl. ¶¶ 3, 4; CUNY 30(b)(6) Dep. at 22:3-12 (Ex. B to Matthews Decl.).[6] The Department anticipated that the courses the non-appointed adjuncts had previously taught could be taught by the full-time faculty. Huang Decl. ¶ 17; CUNY 30(b)(6) Dep. at 27:7-28:13 (Ex. B to Matthews Decl.) ("The overwhelming majority of full-time faculty members were prepared to teach managerial accounting and financial accounting…[a]s a consequence, there was not much need in adjunct faculty members teaching financial and managerial accounting."). Indeed, as of April

[6] Tenure track faculty members are full-time faculty members who are hired and go through a tenure and promotion process; they are reappointed annually based on scholarship, scholarship productivity, teaching, and service. CUNY 30(b)(6) Dep. at 10:8-19; 11:18-21 (Ex. B to Matthews Decl.). Eventually, after their sixth year, they undergo a comprehensive review based on those factors and are granted or denied tenure. *Id*. Full-time lecturers are full-time employees who are appointed annually for five years, until, after a review, they are able to obtain a certificate of continuous employment and become permanent lecturers based on their teaching portfolio, service, and professional development. CUNY 30(b)(6) Dep. at 9:17-10:3; 11:13-16 (Ex. B to Matthews Decl.). Conversely, adjunct faculty members are part-time employees who are reappointed, on annual or multi-year reappointments, and who often fill in on a temporary basis. CUNY 30(b)(6) Dep. at 9:13-16; 14:2-25 (Ex. B to Matthews Decl.).

2023, in a survey completed by 15 full-time Department faculty members, 13 full-time faculty members could teach financial accounting and 9 full-time faculty members could teach managerial accounting. April 24 and May 1, 2023 Emails from Ivy Huang to P&B Committee (Bates No. CUNY 00000396 – 00000399 and CUNY 00000430 – 00000431) (Ex. A to Huang Decl.) at p. 35. Conversely, Business Law courses, for example, could only be taught by one full-time faculty member. *Id*. Thus, as the full-time faculty were able to absorb the financial accounting courses, it was not necessary to renew the contracts of part-time adjunct faculty members who had been teaching those courses.

In sum, the undisputed record shows that CUNY had a legitimate, non-discriminatory reason to non-reappointment Plaintiff, namely, that the fiscal and programmatic needs of the Department – including the decreasing enrollment, impending budget cut, and recent full-time hires – warranted the non-reappointment of adjunct professors, including Plaintiff, in the Department in the Spring of 2023. *See Ruggieri v. Harrington*, 146 F. Supp. 2d 202, 220 (E.D.N.Y. 2001) (finding low enrollment to be a legitimate, nondiscriminatory reason for university to not offer classes); *see also Boise*, 2003 WL 22390792 at *6 (noting that university had "discretion to assign courses according to its institutional needs and the intellectual rigor of individual faculty members.").

## III. PLAINTIFF CANNOT DEMONSTRATE PRETEXT

The final and ultimate burden is on the plaintiff to offer evidence that the defendant's reason is a mere pretext for intentional discrimination. *Eka v. Brookdale Hosp. Med. Ctr.*, 247 F. Supp. 3d 250, 263 (E.D.N.Y. 2017); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) ("[a]lthough intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally

discriminated against the plaintiff remains at all times with the plaintiff.'"); *White v. Roosevelt Union Free Sch. Dist. Bd. of Educ.*, 2025 WL 552744, at *9 (E.D.N.Y. Feb. 19, 2025) (where the defendant proffers a legitimate rationale for its decision, "the presumption of discrimination is rebutted and it simply drops out of the picture. The burden then shifts back to the plaintiff to show, without the benefit of any presumptions, that a reasonable jury could conclude that more likely than not the employer's actions were motivated, at least in part, by a discriminatory reason."). Plaintiff cannot do so here.

To avoid summary judgment, Plaintiff "must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by [the defendant] were false." *Weinstock*, 224 F.3d at 42; *see also Weber*, 973 F. Supp. 2d at 255–56 (citing *Israel v. Napolitano*, 2010 WL 3338638, at *3 (N.D.N.Y. Aug. 24, 2010) ("[T]o avoid summary judgment, the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors.")); *Goldschmidt v. New York State Affordable Hous. Corp.*, 380 F. Supp. 2d 303, 313 (S.D.N.Y.2005) ("The burden then shifts back to the plaintiff to show, without the benefit of any presumptions, that more likely than not the employer's decision was motivated, at least in part, by a discriminatory reason."); *see also Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013) ("An employee who alleges status-based discrimination under Title VII ... [must] show that the motive to discriminate was one of the employer's motives."); *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011) ("Title VII ... prohibits employment discrimination 'because of ... race, color, religion, sex, or national origin' and states that such discrimination is established when one of those factors 'was a motivating factor for any employment practice, even though other factors also motivated the

practice.'"). At this last stage, a plaintiff "cannot merely rationalize, explain, or disagree with an employer's proffered non-discriminatory reasons to survive summary judgment." *Ehrbar*, 131 F. Supp. 3d at 29.

Here, Plaintiff cannot present any evidence of pretext demonstrating that CUNY's proffered legitimate, non-discriminatory reason was false and that discrimination was the real reason she was non-reappointed, let alone evidence sufficient to support a rational finding by a factfinder. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("a reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.") (emphasis in original). Plaintiff herself admits that she was "[n]ever privy" to the Department's enrollment numbers during her employment; that she was not involved in determining faculty courseloads in the Department at any time during her employment; and that she was never involved in hiring faculty in the Department at any time during her employment. Pl. Dep. at 20:9-17; 21:8-16 (Ex. A to Matthews Decl.). Plaintiff further admits that while she was employed at Queens College in the Department, not only was she not involved in setting the Department budget, she in fact had "absolutely no idea" how the Department budget was determined or what the Department budget even was. Pl. Dep. at 26:3-21 (Ex. A to Matthews Decl.). Therefore, she cannot raise a genuine issue of material fact concerning CUNY's legitimate, non-discriminatory reason for her non-reappointment.

To the extent Plaintiff attempts to claim the Department was somehow deficient in following the CBA's requirements, such an assertion is baseless and, in fact, belied by the evidence. The CBA requires, when considering an adjunct, a comprehensive review "of the adjunct's performance and an assessment of the fiscal and programmatic needs of the department and/or the college[.]" Appendix E to the Agreement between the City University of New York and

the Professional Staff Congress/CUNY (Bates No. CUNY 240) (Ex. D to Matthews Decl.). Here, it is undisputed that a comprehensive review of the adjunct faculty was undertaken, as required by the CBA. *See, e.g.*, CUNY 30(b)(6) Dep. at 40:19-43:2 (Ex. B to Matthews Decl.); Huang Dep. at 35:15-24; 37:9-38:15. (Ex. C to Matthews Decl.). As set forth in further detail above, the assessment of the fiscal and programmatic needs of the Department warranted the reappointment decisions made in May 2023. *See supra,* section II. The decision not to reappoint Plaintiff was not made because Plaintiff's performance was unsatisfactory; the Department "proceeded with the knowledge that all adjuncts they are reviewing have good performance….[T]here were no performance concerns with any of the adjuncts that they were reviewing." CUNY 30(b)(6) Dep. at 42:6-15 (Ex. B to Matthews Decl.). There was no requirement – in the CBA or otherwise – that, so long as an adjunct performed satisfactorily, they would be reappointed. In fact, the CBA explicitly states, and Plaintiff admits, "there is no presumption of continuous appointments." Appendix E to the Agreement between the City University of New York and the Professional Staff Congress/CUNY (Bates No. CUNY 240) (Ex. D to Matthews Decl.); Pl. Dep. 28:11-14 (Ex. A to Matthews Decl.) (Q: When you were reappointed in 2020 for three-years, were you guaranteed reappointment in 2023?" A: "No, nothing was ever guaranteed.").

Further, even if Plaintiff had been able to demonstrate an inference of discrimination, which she has not, the fact that all decision makers unanimously voted not to reappoint Plaintiff further rebuts any inference at the pretext stage. *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 259 (E.D.N.Y. 2012), aff'd, 713 F.3d 163 (2d Cir. 2013) ("A discriminatory inference can be rebutted when multiple evaluators all express dissatisfaction with the plaintiff's performance.") (citing *Baluta v. Hicksville Union Free Sch. Dist.*, 2000 WL 335770, at *5 (E.D.N.Y. Mar. 15, 2000) (finding that use of multiple evaluators undercuts discriminatory inference); *Ralkin v. N.Y.C.*

*Transit Auth.*, 62 F. Supp. 2d 989, 998 (E.D.N.Y.1999) (same); *Missick v. City of New York*, 707 F. Supp. 2d 336, 349 (E.D.N.Y.2010) (same); *see also Halkitis v. New York City Dep't of Educ.*, 2022 WL 392911, at *5 (S.D.N.Y. Feb. 9, 2022) (same); *Marseille v. Mount Sinai Health Sys.*, Inc., 2021 WL 3475620, at *8 (S.D.N.Y. Aug. 5, 2021) (same).

Finally, any references to alleged "stated polic[ies]" at CUNY regarding diversity, *see* Plaintiff's Counterstatement of Material Facts, ¶¶ 5, 6 (ECF No. 28), are a red herring as Plaintiff does not plausibly connect these alleged "policies" *to Plaintiff's non-reappointment*. In fact, the directive Plaintiff relies on explicitly applies to "tenure-track and lecturer lines." Ex. H to Seliger Decl. Plaintiff was considered for reappointment to an *adjunct* position, and not a tenure-track or lecturer line; thus, this directive is entirely unrelated to Plaintiff's position.

In sum, Plaintiff cannot present any evidence that the legitimate, non-discriminatory reason put forth by CUNY for her reappointment was pretextual. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim of religious discrimination.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant its motion for summary judgment dismissing Plaintiff's claim.

Dated: New York, New York
October 26, 2026

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant CUNY*
By:

s/
Elyce N. Matthews
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-8910

**Certification Pursuant to Local Civil Rule 7.1(c)**

In accordance with Local Civil Rule 7.1(c), I hereby certify that this memorandum of law contains 7,465 words, exclusive of caption and signature block and complies with the word count limit in that Rule, as established using the word count function of Microsoft Word.

Dated: New York, New York
October 26, 2026

s/
Elyce N. Matthews
Assistant Attorney General